J-A22021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: V.B.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 373 WDA 2022 |

Appeal from the Order Entered March 11, 2022
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s): No. 113 of 2021

| | | |
|---|---|---|
| IN RE: ADOPTION OF: V.Z.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 374 WDA 2022 |

Appeal from the Order Entered March 11, 2022
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  o. 114 of 2021

BEFORE:   OLSON, J., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: OCTOBER 5, 2022**

R.M. ("Father") appeals from the March 11, 2022 Order that involuntarily terminated his parental rights to twins V.B.M. and V.Z.M. (collectively, "Children"), born in May 2013.  Upon careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Father and D.M.S. ("Mother") are the biological parents of Children.[1] The parents have a history of drug use and domestic violence, and the Westmoreland County Children's Bureau ("the Agency") has received and investigated numerous reports regarding the family since 2014. Most recently, on January 25, 2019, the Agency received a report that the Greensburg Police Department attempted to serve arrest warrants on Mother and Father for allegations of drug trafficking in their shared home and found then-5-year-old Children alone in the home, which was in deplorable condition with very little food. It was unclear how long Children had been in the home unattended. Father was eventually located, arrested, and incarcerated and, on the same day, the Agency obtained emergency custody of Children.

On February 4, 2019, the trial court adjudicated Children dependent. Father remained incarcerated. At the hearing, the court took judicial notice of Father's various pending criminal charges, including various drug offenses and six counts of Endangering the Welfare of Children stemming from a 2018 home raid where Greensburg police found several bags of methamphetamines

---

[1] The court terminated Mother's parental rights to Children on November 10, 2021. She is not a party to this appeal.

and marijuana.[2]  The court also took judicial notice of Strangulation and other related charges stemming from a domestic dispute with Mother.[3]

The trial court ordered Father to participate in a drug and alcohol evaluation, comply with random drug screens, undergo a mental health/psychiatric evaluation, participate in a parenting assessment, participate in domestic abuse counseling, obtain suitable housing, secure and maintain employment, comply with terms of probation, and participate in available counseling services while incarcerated.  The trial court also ordered Father to comply with all recommendations of the above-mentioned evaluations and assessments as well as provide the Agency with written documentation of completion of the services.

On July 15, 2020, Father pleaded guilty to the above-mentioned charges at two separate dockets and the court sentenced him to six to twenty-three months' incarceration on the drug and child endangerment charges, and two years of probation and no abusive contact with Mother on the domestic violence charges.  During this time, Father was also indicted on federal drug charges.

---

[2] The Commonwealth charged Father with Possession with the Intent to Deliver, Possession of a Controlled Substance, Possession of Marijuana, six counts of Endangering the Welfare of Children, and three counts of Tamper With/Fabricate Physical Evidence at Docket No. 637-2019.

[3] The Commonwealth charged Father with Strangulation, Simple Assault, and Harassment at Docket No. 640-2019.

The trial court continued to hold permanency review hearings and repeatedly ordered Father to comply with the above-mentioned services. On March 19, 2021, Father was released from incarceration. Shortly thereafter, Father relapsed on methamphetamines. On July 12, 2021, the court held a permanency review hearing and found that Father was minimally compliant with the permanency plan and had made minimal progress toward reunification with Children.

On August 21, 2021, the Agency filed petitions to involuntarily terminate Father's parental rights to Children. On January 27, 2022, approximately three years after Children came into the care and custody of the Agency, the trial court held a hearing on the petitions. The trial court appointed Children's guardian *ad litem* (GAL) to serve as Children's legal counsel and, at the beginning of the termination hearing, the court found that the dual role did not pose a conflict.

The trial court heard testimony from Amanda Davis, Agency caseworker; Derek Carothers, staff member of ARCpoint Labs; Neil Rosenblum, Ph.D.; Kelsey Huffman, probation officer; Eamon Galvin, co-director of Moving Forward 15601, LLC ("Moving Forward"); Barbara Desmond, social worker for Moving Forward; Michelle Dornin, co-director of Moving Forward; and Father.

Ms. Davis testified in accordance with the above-mentioned events. Additionally, Ms. Davis informed the court that Children have been in care for

37 months and Father has failed to complete drug and alcohol counseling, engage in mental health treatment, obtain appropriate housing, participate in domestic abuse counseling, participate in anger management, comply with probation, and sign any necessary releases of information. Ms. Davis explained that Father has not demonstrated the capacity to resume custody of Children because his drug use and incarceration "severely impacted" his ability to provide for the proper supervision of Children. N.T. Hearing, 1/27/22, at 168. Ms. Davis stated that Father was currently incapable of meeting Children's needs.

Ms. Davis further testified that Children have been in a pre-adoptive foster home for 15 months, are doing very well, and are bonded with their foster mother. Ms. Davis stated that Children have a strong relationship with their foster mother and explained, "[t]hey are openly expressive to their feelings and enjoy being in the presence of their foster mother. . . . They have displayed affection by hugging and verbal cues such as ['you are my family'] and ['I love you.'] [F]oster mother is always available to [C]hildren and assures that they are safe, both verbally and physically." *Id.* at 173. Ms. Davis testified that Children are doing well in school, friendships, and activities.

Ms. Davis testified that Father participates in supervised visits with Children and Father is very engaged and acts appropriately. Ms. Davis

observed, however, "the bond seems to be less of a parent-child relationship and more of a friendly nature." *Id.* at 155.

Finally, Ms. Davis testified that terminating Father's parental rights was in Children's best interest and would not have an adverse effect on Children. Ms. Davis explained that both Children refer to Father by his first name, have voiced concerns about their own safety if returned to Father's care due to his drug use, and have expressed fear of not having food or access to school if they are returned.

Mr. Carothers testified that since July 2021, Father had missed 24 out of 26 requested drug screens even though lab staff left notes on Father's door 22 times to encourage Father to comply with testing.

Dr. Rosenblum testified that he conducted an initial mental health evaluation of Father on May 21, 2021, where Father admitted to extensive drug use as well as selling drugs, and presented as remorseful and motivated to turn his life around. Dr. Rosenblum explained that Father failed to disclose that the court had ordered him to have a mental health evaluation and that he had recently relapsed on methamphetamines. At the time, Dr. Rosenblum recommended that the Agency give Father additional time to complete his treatment goals.

Dr. Rosenblum conducted a second evaluation on September 22, 2021. He testified that Father behaved much differently during the second evaluation and was increasingly angry, antagonistic, confrontational, rude, and "highly

inappropriate[,]" which caused Dr. Rosenblum to end the evaluation early. *Id.* at 36.

Dr. Rosenblum concluded that Father had made no progress in addressing his treatment goals and, in fact, had taken several steps backward in addressing his diagnoses.[4] Dr. Rosenblum testified that, despite Father's awareness of his problems, he had a very limited ability to control his emotions and follow through with his treatment goals, and he displayed anger and a lack of stability which clearly calls into question Father's "ability to function in a stable manner as a custodial parent." *Id.* at 41.

Dr. Rosenblum informed the court that it was his "strong opinion" that adoption was in Children's best interest, stating that even though Father displayed some intuitive parenting skills and genuinely loves his children, there is no "viable potential for reunification." *Id.* at 41-42, 45. Dr. Rosenblum further opined that Children would experience "some sense of loss" if Father's rights were terminated but that "the advantages would far outweigh the disadvantages of dealing with losing that relationship." *Id.* at 45. He explained that Children are "finally getting the help educationally, therapeutically, recreationally [and] finally having an opportunity to develop

_____

[4] Dr. Rosenblum diagnosed Father with a history of stimulant use disorder, cannabis use disorder, unspecified trauma-and-stress-related disorder, unspecified depressive disorder, adult antisocial disorders, and antisocial personality traits. Dr. Rosenblum also diagnosed Father with secondary diagnoses of a history of relationship distress in both partner and child relationships.

their personalities, their interests, their identities in this [foster] home, and this is what they need in order to move forward[.]" *Id.* at 46. Finally, he testified that Children have "taken root" in the foster home and would experience a major setback if they were removed. *Id.* at 45-46.

Ms. Huffman, a probation officer with Westmoreland County Adult Probation, stated that Father is non-compliant with the terms of his parole and probation, including drug and alcohol evaluation and testing, and non-compliant with reporting to her office. She informed the court that her office recently filed parole and probation revocation petitions, which are awaiting court dates, and confirmed that it is possible that Father might be re-incarcerated due to his non-compliance.

Mr. Galvin informed the court that Father was discharged from domestic violence and anger management therapy sessions for non-compliance. Mr. Galvin explained that Father only attended 4 out of 15 sessions that were offered to him.

Ms. Desmond testified she supervised therapeutic telephone visits between Father and Children from January 2021 until March 2021, when Father was released from prison. She explained that since Father's release, he been offered 3-hour supervised therapeutic visits twice per month, and he has attended 6 out of the 10 visits. Ms. Desmond stated that Children are excited to see Father when he attends visits, and that Father is excellent when he interacts with Children. Ms. Desmond testified that the only thing Father

could improve during visitation was to attend more consistently because Children are very distressed when he does not attend. Ms. Dornin also testified regarding supervised visits between Father and Children. She supervised visits since the beginning of the case, including telephone and virtual visits while Father was incarcerated, and observed that Father was appropriate, affectionate, and nurturing to Children during the visits.

Father testified and informed the court that he was 30 days sober. Father admitted that he relapsed soon after he was released from incarceration but stated that he recently completed intensive drug and alcohol rehabilitation and was currently participating in intensive outpatient therapy three times a week. Father also testified that he completed anger management and parenting classes while incarcerated, and that he participated in a mental health evaluation the day before the hearing. Father explained that he refused to sign releases for the Agency in the past because he did not trust the Agency, but that he would be willing to sign releases now.

Despite the fact that Father opposed termination of his parental rights, he acknowledged that Children were "traumatized" by his past behavior and that it was in their best interest to stay in foster care. *Id.* at 70. Father stated multiple times that he was not mentally ready to assume custody of Children. *Id.* at 70, 197. However, Father, explained, he is now ready to do whatever he needs to do to reunify with Children in the future.

After hearing all the evidence, the trial court concluded that it was in Children's best interest to terminate Father's parental rights. Children's GAL agreed with this disposition.

Father timely appealed and filed a contemporaneous Pa.R.A.P. 1925(b) statement. The trial court relied on its February 16, 2022 Opinion in lieu of a Rule 1925(a) opinion.

Father raises the following issues for our review:

1. Was clear and convincing evidence presented to show that termination was warranted pursuant to 23 Pa.C.S.[] Sections 2511(a)(2), 2511(a)(5), 2511(a)(8) and 2511(b)?

2. Did the trial court err in granting the termination of Father's parental rights despite the lack of clear and convincing evidence that the causes of Father's incapacity, abuse, neglect, or refusal cannot or will not be remedied by Father?

3. Did the trial court err in granting the termination of Father's parental rights by failing to give primary consideration to the developmental, physical and emotional needs and welfare of the child?

Father's Br. at 4.

**A.**

In addressing Father's issues, we are mindful of our well settled standard of review. When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* (citation omitted). "Absent

an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).  We may not reverse merely because the record could support a different result.  ***T.S.M.***, 71 A.3d at 267.  We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." ***Id.***  Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis.  "Initially, the focus is on the conduct of the parent." ***In re Adoption of A.C.***, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted).  "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." ***Id.*** (citation omitted).  If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." ***Id.*** (citation omitted).  Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. ***In re K.Z.S.***,

946 A.2d 753, 758 (Pa. Super. 2008). We concentrate our analysis on subsection 2511(a)(2).

**B.**

In his first two issues, Father avers, *inter alia*, that the trial court abused its discretion when it terminated his parental rights pursuant to Section 2511(a)(2). Father argues that the trial court failed to consider that he participated in many services and exhibited positive parenting skills during visitation with Children, which demonstrates that his "admitted battle with addiction" does not "impact his parenting during the visits with Children." *Id.* at 8-9. Our review of the record belies Father's claims.

Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). The grounds for termination of parental rights under Section 2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties. *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *In re*

*C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019). Notably, a "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010). Moreover, a parent's repeated pattern of criminal activity coupled with a failure to comply with court-ordered goals may satisfy the requisites of incapacity, abuse, neglect or refusal. *In re Adoption of W.J.R.*, 952 A.2d 680, 687 (Pa. Super. 2008).

Finally, sincere efforts to perform parental duties may still be insufficient to remedy an incapacity. *Z.P.*, 994 A.2d at 1117. This is because subsection (a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being," especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." *Id.* (citation omitted).

Father's claims that he participated in services and that his illegal drug use does not impact his parenting are both disingenuous. The trial court emphasized that Children have been in placement for three years and credited Father's admission that he is not able to care for Children at this time. Moreover, the trial court discredited Father's uncorroborated testimony that he has participated in services. The trial court opined:

> [] Children have been in Agency custody for approximately three years and have been in their current foster home for over a year. Father has been minimally compliant with court-ordered services and has made minimal progress towards alleviating the circumstances which initially led to [] Children's placement.

Although Father recently participated in a rehabilitation program, he stated that he is not ready to have Children placed back into his care. Father has had minimal involvement with the Agency since he refuses to sign releases of information regarding services. The Agency has not been able to verify Father's participation in any court-ordered services. . . . Father has been incarcerated six times during [] Children's lifetime. He has an unstable past and has been inconsistent with services throughout [] Children's placement. It is unlikely that Father will be able to remedy his repeated and continuous incapacity in the near future, as three years have passed, and Father has failed to participate in the majority of court-ordered services.

Trial Ct. Op., 2/16/22, at 14-15 (unpaginated).

Our review of the record supports the trial court's findings, and we decline to reweigh the evidence or usurp the trial court's credibility determinations. The Agency presented clear and convincing evidence that Father's refusal to participate in services and maintain his sobriety has rendered him incapable of providing essential parental care to Children. Accordingly, we find no abuse of discretion.

**C.**

In his final issue, Father challenges the trial court's conclusion that terminating his parental rights was in Children's best interest pursuant to Section 2511(b). Father argues that the trial court failed to take Father and Children's relationship into consideration and avers that the record is devoid of evidence that terminating Father's parental rights would serve Children's welfare or needs. Father's Br. at 10. We disagree.

The trial court did consider the relationship between Father and Children. The court acknowledged that Father loves Children, visits go well,

and Children are generally excited to see Father when he appears. Nevertheless, the trial court credited Ms. Davis's testimony that Father and Children have more of a friendly bond than a parent-child bond, Children are thriving in their current foster home, and termination of parental rights would be in their best interest. The trial court further credited Dr. Rosenblum's "strong" opinion that termination of Father's parental rights was in Children's best interest, the advantages outweighed the disadvantages, and Children would be adversely affected if they were removed from their current foster home. The trial court opined:

> Father clearly loves his Children and recognizes the trauma his past actions have caused them. While we appreciate Father taking responsibility for his past actions, [] Children are currently thriving and making developmental progress in their placement. [] Children have become rooted in their foster family and removing them from this family would cause them further stress as they have developed stability in their current home. For these reasons, this [c]ourt is convinced that termination of Father's parental rights would best serve the needs and welfare of [Children].

Trial Ct. Op. at 20. The record supports the trial court's findings, and we decline to reweigh the evidence. Accordingly, we discern no abuse of discretion.

**D.**

In conclusion, our review of the record supports the trial court's findings. We discern no error of law or abuse of discretion with respect to the trial court's conclusion that the Agency presented clear and convincing evidence to terminate Father's parental rights pursuant to Section 2511(a) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/5/2022